UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **PARIS AVERY**,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>**Angela McCall-Tanner** *in her individual*  )<br>*capacity*,  **Christine Wilson**, *in her individual*  )<br>*capacity*, **Demetra Garvin**, *in her individual*  )<br>*capacity.*  )<br>  )<br>  )<br>  Defendants.  )<br>  )<br>  )<br>_____) | C/A: 9:14-cv-00037- DCN-BM<br><br>**AMENDED<br>COMPLAINT<br>JURY TRIAL DEMANDED** |

Plaintiff, Paris Avery, by and through her attorneys, Elizabeth A. Franklin-Best, E. Charles Grose, and J. Christopher Mills, submits the following Complaint against the Defendants, Angela McCall-Tanner, Christine Wilson, and Demetra ("Demi") Garvin in connection with her wrongful conviction and imprisonment for homicide by child abuse in May 2008.

### NATURE OF THE ACTION

This is an action for damages and redress for illegal and unconstitutional actions taken by the State of South Carolina and individuals acting under color of law that led to Paris Avery's wrongful arrest and conviction. Their illegal actions include pursuing a prosecution theory advanced by a forensic expert who rendered baseless medical opinions well beyond her area of expertise, lying to a magistrate to secure an arrest warrant, and conspiracy to convict an innocent woman of homicide of child abuse. These actions were taken in violation of the Constitution of the United States of America, and Paris brings this action for relief pursuant to 42 U.S.C. §1983.

1

## INTRODUCTION

1.     Paris Avery was a young single mother of three young children in August 2006. Her children's father, physically abusive to her and the children, was temporarily out of the picture and likely abusing drugs as he had done throughout their relationship. He never provided any financial support, although his parents often assisted to provide for the children. They are now the guardians of Paris's surviving children. To provide for her and her children, Paris worked at a local Golden Corral restaurant.

2.     Paris's youngest child, then fifteen (15) months old, had been diagnosed with moderate to severe eczema since he was at least twelve (12) months old. His medical records show that he had a skin condition since he was four (4) months old. At his one year checkup, he was prescribed Atarax. Hydroxyzine is the generic name for the medication, and it is approved by the United States Food and Drug Administration (FDA) for pediatric use as an antihistamine. Her child was prescribed the medication by his physician at Beaufort Pediatrics to control itching associated with the eczema that made him miserable.

3.     On the night of August 18, 2006, the child died while at a babysitter's house and in her care. A toxicology screen revealed that he had 300 nanograms per milliliter (ng/ mL) of hydroxyzine in his system.

4.     Based on this concentration in his blood—which the state falsely and misleadingly characterized as "tremendous" and which its retained forensic expert, Demi Garvin, testified at trial was illustrative of "abuse"—the State, through state actors, Angela McCall-Tanner and Christine Wilson, prosecuted Paris in disregard of her civil rights. Based on Garvin's testimony, and in violation of a number of state statutes and established South Carolina law, the State prosecuted Paris Avery for homicide by child abuse by advancing a spurious

theory promoted by this expert. According to Garvin, Paris used the doctor prescribed medication to "chemically restrain" her child so that she did not have to take care of him. At trial, Garvin offered the only testimony upon which the jury could have found Paris guilty—indeed, her testimony constituted the centerpiece of the State's prosecution against her-- and she was convicted and sentenced to 35 years of incarceration. To get to this point, these state actors provided materially false information, and omitted exculpatory information, to Magistrate Oliver G. Chase, the magistrate who signed the arrest warrant.

5. On June 12, 2013, the South Carolina Supreme Court reversed Paris's conviction, holding the State failed to provide evidence that she acted with extreme indifference to her child's well-being. She was released from prison on July 25, 2013 and now lives in Tacoma, Washington.

6. Paris spent **2281** days wrongfully incarcerated, and has lost custody of her other two children. With no other remedy available, she now seeks financial redress for the State's misconduct.

## JURISDICTION & VENUE

7. This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331 and 28 U.S.C. §1343(3). This action is brought pursuant to 42 U.S.C. § 1983 as an action to redress the deprivation under color of state law rights secured by the United States Constitution. This Court also has jurisdiction under Article III of the Constitution and 28 U.S.C. §1332 because the parties are diverse in citizenship.

8. The Court has authority to award costs and attorneys' fees pursuant to 28 U.S.C. §1988.

9.      Venue is proper in this district pursuant to 28 U.S.C. §1391 (b).

## PARTIES

10.     Plaintiff Paris Avery is an individual who is now a resident of Tacoma, Washington. At all times relevant to this action, she was a resident of Beaufort County, South Carolina.

11.     At all times relevant to this action, Defendant Angela McCall-Tanner was an assistant solicitor employed by 14th Circuit Solicitors Office located in Beaufort County, SC and active in the investigation of this case. She is named in her individual capacity for actions taken under color of law, and within the scope of her employment in her investigative capacity.

12.     Defendant Investigator Christine Wilson is an individual who resided in South Carolina at all times relevant to this Complaint. Wilson is named in her individual capacity for acts taken under color of law within the scope of her employment.

13.     Defendant Demetra Garvin is an individual who resided in South Carolina at all times relevant to this Complaint. She is named in her individual capacity.

## FACTS

14.     On the morning of August 18, 2006, Paris Avery took her three children to Carol's Child Care, and then went to work at the Golden Corral restaurant until 5:00pm. After work, she and a co-worker, Angenetta Wright, picked up her children from daycare. The women and children then returned to the Golden Corral for dinner around 7:00pm. They stayed for approximately 1 hour. Afterwards, Wright took Paris and the children home to Paris's house. Paris's children were ages 15 months (and not 17 months as alleged in the arrest warrant), 2, and 4.

15. Around 10:00pm that night, Wright drove back to Paris's house to check on her. Wright was supposed to watch the children that night when Paris returned to work to finish rolling silverware. Paris was asleep, but Wright woke her up and told her she had to go to work or she would be fired. The children's paternal grandparents, Peggy and Rotundo Young, and the children's former foster parents, Sharon and George Williams, declined to help Paris with babysitting this night. Wright helped Paris get her children ready to leave and then drove them back to Wright's house, and Paris put her child in Wright's bed.

16. Paris then left for the Golden Corral and returned about an hour later, around midnight. After checking on her child, she realized she could not wake him up. Paris was distraught and crying, so Wright called 911. Later that night at the hospital, Paris was suicidal.

17. The paramedics who responded to Wright's house found that the child could not be revived, and concluded that he had not been breathing and had not had a pulse for twenty to thirty minutes. Christine Wilson, an investigator with the Beaufort County Sheriff's Department, arrived after the child's body had been removed, and Paris informed her that her son suffered from eczema and was taking hydroxyzine to relieve the itching.

18. Wilson then sent two persons—Regina Mitchell, Wright's boyfriend's cousin (and who had no law enforcement experience) and Deputy Adam Draisen-- to Paris's house, located a few houses down from Wright's house, to retrieve the medication. According to Wilson's investigative notes, Paris informed her that she gave her child three doses of the hydroxyzine that day, as prescribed by the physician.

19. Dr. Michael Caplan, of the Medical University of South Carolina, performed an autopsy on the child on August 19, 2006 at 12:15pm, approximately 11 ½ hours after the child is

believed to have passed away. According to his autopsy report, Dr. Caplan was informed by Investigator Christine Wilson that hydroxyzine was the only medication the child had taken.

20.     Wilson informed Dr. Caplan that Paris was intoxicated that evening, but this statement was false.

21.     On September 19, 2006, Garvin told Wilson that, in her experience, this appeared to be a case of "chemical restraint" rather than "intentional poisoning."

22.     On September 28, 2006, Wilson met with Angenetta Wright at the Law Enforcement Center. Wright told Wilson that (according to Wilson's investigative notes), "Paris never admitted to Angenetta that she gave (her child) too much medication. In fact, she maintained she had given him the proper amount, because Angenetta confronted her about it." This fact was not communicated to Magistrate Chase.

23.     After consulting with Garvin, Dr. Caplan concluded in his autopsy report that the cause of the child's death was the result of acute hydroxyzine intoxication complicating hydroxyzine treatment for eczema. He determined the manner of death was homicide.

24.     Months later, after conducting an investigation directed by McCall-Tanner, Wilson obtained an arrest warrant for Paris for Homicide by Child Abuse. Though Paris had called weekly to speak to Wilson, and had been informed the investigation was "on-going," Wilson informed her that the decision to file charges was "out of [her] hands." Paris voluntarily surrendered herself to the police. Paris remained in pre-trial custody from April 30, 2007 until the date of her trial.

25.     The arrest warrant secured by Wilson, and which was signed by Magistrate Oliver G. Chase on April 24, 2007, stated, in pertinent part, "[t]he defendant did *knowingly administer* to her son . . . 17-months-old, *an excessive amount* of his prescribed eczema medication,

6

hydroxyzine hcl.  The markedly elevated dose or doses resulted in his death, the cause of which was reported by the pathologist as acute hydroxyzine intoxication.  *Affiant and others are witnesses to prove the charge*."

26.     After trial, held on May 19, 2008 before the Honorable Carmen T. Mullen Paris was convicted and sentenced.  McCall-Tanner argued to the jury that Paris may have even intentionally murdered her child.

27.     McCall-Tanner also repeatedly misstated the evidence in the case during her closing argument, for the purpose of inflaming the passions of the jury.

28.     Garvin's business, Forensic Science Network, LLC, is a for-profit business located in Columbia, South Carolina.   Upon information and belief, she charges at least $250 an hour for her services.  According to her website, she offers consultation services in "the analysis and interpretation" of toxicology reports.  She also offers her expertise as an "expert witness." *See* http://forensicsciencenetwork.com (*last visited* November 11, 2013).

29.     She is also employed as the Director of the forensic laboratory for the Richland County Sheriff's Office, located in Columbia, South Carolina.

30.     Garvin is a "Doctor of Pharmacy" or "Pharm D." A Pharm D is the professional degree for clinical pharmacists, and is not to be confused with a Doctorate of Philosophy (or Ph. D) in Pharmacology.

31.     Garvin is not a physician.

32.     Garvin violated established South Carolina law when she, as a licensed pharmacist, opined and then testified as to the cause and manner of death of the child since this conclusion was a medical opinion and beyond her education or expertise.

7

33. Garvin violated established South Carolina law when she communicated to Wilson and McCall-Tanner that she determined the child died of a drug overdose and that Paris used the medication to chemically restrain him since such conclusions are medical judgments and are well beyond the expertise of a pharmacist.

34. Garvin's role in this case, ostensibly as a consulting forensic toxicologist, but which included her rendering and communicating medical judgments about the cause and manner of death constitutes the unauthorized practice of medicine.

35. Garvin's participation in this case, in which she testified as a "Doctor of Pharmacy" exceeded her area of expertise.

36. The concentration of hydroxyzine in the child's system, and the amount of the drug that remained in the medicine bottle (assuming it was properly filled by the pharmacist, and further assuming there was no accidental spillage) is consistent with the child's taking ½ *tablespoon dosages* (instead of ½ teaspoon dosages) of the prescribed medication.

37. Garvin knew that the amount of hydroxyzine in the child's system was consistent with the child receiving ½ tablespoon, instead of ½ teaspoon, dosages of the medication, but actively participated with McCall-Tanner and Wilson in the prosecution of Paris Avery for homicide by child abuse which required the State to prove that she "recklessly" disregarded the well-being of her child.

38. Garvin offered highly misleading information to the court during trial in support of her "chemical restraint" theory, including that it was unusual for a child to be prescribed hydroxyzine when it has been approved by the FDA for pediatric use.

39. Garvin's improper findings regarding cause and manner of death have been debunked by a South Carolina federal court in the past.

40. At some point prior to Paris's being arrested, either Wilson or McCall-Tanner received a letter from the child's biological father where he stated that "Paris Avery be at fault because of *being careless*" and that "for some reason she (Paris) told me he (Child) was taking *tablespoon dosages* instead of teaspoons as stated in the Forensic Autopsy Final Report." This information was not communicated to Magistrate Chase, either.

41. Wilson did not communicate to the magistrate that there were at least *two witnesses* who stated that Paris believed she was giving the child the proper dosing of medication. Instead, she informed the magistrate that she had witnesses who said Paris "knowingly" gave her child too much medication on this date. That was a false statement.

42. The defendants all had reason to know that the concentration of hydroxyzine in the child's blood was a product of this tragic, but simple, mistake but chose instead to pursue a homicide by child abuse case against Paris.

43. On September 27, 2006, Wilson completed two Affidavits for Emergency Protective Custody and forwarded them to the Department of Social Services for purposes of having Paris's other two children removed from her custody.

44. McCall-Tanner knew that it was illegal to have her expert testify beyond her range of expertise because it is well established law in this state.

45. As a head solicitor in the Fourteenth Circuit Solicitor's Office in 2006, McCall was an integral part of the "vertical prosecution and the on-call system" that office initiated in 2006. According to the website:

> "In 2006, an on-call component was added so that law enforcement had access to a lawyer 24 -hours a day. The on-call lawyer is tasked with providing whatever legal assistance the officer in the field requires and is available to go to the crime scene at a moment's notice. This has the added benefit of helping the prosecutor prepare their cases from the beginning, in many cases before arrest."

*See* http://www.scsolicitor14.org/uploads/2012_Report.pdf (*last visited* 2/20/14).  The office is literally designed to put solicitors in an investigative capacity from the very beginning of a case.  McCall-Tanner directed the investigation against Paris Avery for homicide by child abuse.

46.     Additionally, McCall-Tanner was a lead member of that office's Career Criminal Task Force which had a reputation for aggressively prosecuting suspected criminals.

47.     Even after the South Carolina Supreme Court reversed Paris's conviction, McCall-Tanner refused to consent to her request for an expungement.

**FOR A FIRST CAUSE OF ACTION**
**42 U.S.C. §1983 Claim for Fourth Amendment**
**(Malicious Prosecution)**
**Against Defendants McCall-Tanner, Wilson, and Garvin**

48.     Plaintiff incorporates all of the foregoing as if set forth herein and further alleges as follows:

49.     That Defendants have violated the rights of the Plaintiff under the Fourth Amendment to the U.S. Constitution causing the Plaintiff to be deprived of her liberty as the result of lying and omitting material information to a magistrate by a government actor acting in an investigating capacity.  Plaintiff was arrested without probable caused, was incarcerated, prosecuted and convicted pursuant to the arrest warrant based on the investigation of the named defendants.  The charge was ultimately dismissed in plaintiff's favor by the reversal of the conviction by the South Carolina Supreme Court.

50.     As a direct result and consequence of these actions of the Defendants, the Plaintiff lost her liberty for 2281 days as well as all the emotional and pecuniary injuries set forth below in prayer for relief.

## FOR A SECOND CAUSE OF ACTION
## 42 U.S.C. §1983 Conspiracy
## Against defendants McCall-Tanner, Wilson and Garvin.

51.     Plaintiff incorporates all of the foregoing as if set forth herein and further alleges as follows:

52.     That defendants Garvin, McCall-Tanner and Wilson had an express or implied agreement to pursue a homicide by child abuse charge against Paris when it was not supported by the evidence available and for the purposes of having an innocent woman convicted of a horrendous crime.  The object of the conspiracy was to violate Paris Avery's 4th Amendment rights and they committed the over act by coordinated acts during the pre arrest investigation, by agreeing to apply for an arrest warrant and prosecuting the plaintiff.

53.     Defendants' conspiracy directly and proximately deprived Avery of her rights under the Fourth Amendment and caused her unfair trial, wrongful conviction and imprisonment, and all the physical, emotional and pecuniary injuries set forth above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Paris Avery prays that this Court grant the following relief:

A.  Enter judgment in her favor and against Defendants on all counts of the complaint;

B. Award compensatory damages to Ms. Avery and against the Defendants, jointly and severally, in an amount to be determined at trial;

C.  Award punitive damages to Ms. Avery and against all Defendants, jointly and severally, in an amount to be determined at trial, in order that such award will deter similar illicit conduct by Defendants and other officials in the future;

D.  Award to Ms. Avery and against Defendants pre-judgment and post-judgment interest on all sums awarded her in this matter and, further, award Ms. Avery recovery of her costs concerning this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

E.  Grant Ms. Avery all such other relief to which she may be entitled.

**ELIZABETH FRANKLIN-BEST**
**Elizabeth Franklin-Best, P.C.**
Federal I.D. 9969
900 Elmwood Avenue, Ste. 101
Columbia, South Carolina 29201
(803) 765-1044
elizabeth.a.franklin@gmail.com

Dated this 17th day of March, 2014.

**E. CHARLES GROSE**
**The Grose Law Firm**
Federal I.D. 6072
400 Main Street
Greenwood, South Carolina 29646
(864) 538-4466
Charles@groselawfirm.com

**J. CHRISTOPHER MILLS**
**Chris Mills Law**
Federal I.D. 4802
P.O. Box 8475
Columbia, South Carolina 29202
803-748-9533

Columbia.                                chris@chrismillslaw.com

**Attorneys for Paris Avery**

BY: /s/ Elizabeth Franklin-Best