IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT  DIVISION

| | |
|---|---|
| Paris Avery, | ) CIVIL ACTION NO. 9:14-0037-DCN-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Angela McCall-Tanner, Christine Wilson, | ) |
| Demetra Garvin and Estate of Coroner Curt | ) |
| Copeland, in their individual capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action has been filed by the Plaintiff pursuant to 42 U.S.C. § 1983, alleging a violation of her constitutional rights by the named Defendants.  This action arises out of Plaintiff's conviction and imprisonment for homicide by child abuse in May 2008.  The Defendants Angela McCall-Tanner and Christine Wilson filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P. on April 1, 2014.[1]  Plaintiff filed memorandum in opposition to the Defendants' motion on April 17, 2014.  This motion is now before the Court for disposition.[2]

---

[1]The Defendant Demetra Garvin, who is represented by separate counsel, filed an Answer on April 1, 2014.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C.  The Defendants have filed a motion to dismiss.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Allegations of the Complaint**

Plaintiff alleges in her Amended Complaint that the Defendants are guilty of malicious prosecution for causing her to be deprived of her liberty as a result of lying and omitting material information when obtaining an arrest warrant for her (First Cause of Action), and by engaging in an unlawful conspiracy to pursue a homicide by child abuse charge against her when it was not supported by the evidence (Second Cause of Action). Plaintiff alleges that in August 2006 she was a single mother of three young children, and worked at a local restaurant. Plaintiff alleges that the children's father had never provided any financial support for the children. Plaintiff alleges that her youngest child, then fifteen months old, had been diagnosed with moderate to severe eczema since he was at least twelve months old, and that he had been prescribed Atarax by his physican, which is approved for pediatric use as an antihistamine by the U. S. Food and Drug Administration (FDA).

Plaintiff alleges that in the morning of August 18, 2006, she took her children to Carol's Childcare, and then went to work. After work she and a coworker, Angenetta Wright, picked up the children from daycare and ate dinner at the Golden Corral Restaurant (where Plaintiff worked) from about 7 to 8 p.m. Wright then took Plaintiff and her children home. Plaintiff alleges that later that evening Wright came back around 10:00 p.m. because Plaintiff had to return to work to finish rolling silverware. Plaintiff alleges that Wright was supposed to watch the children that night, and that Wright helped her get her children ready to leave and then drove them back to Wright's house, where Plaintiff put her child in Wright's bed. Plaintiff then went to work.

Plaintiff further alleges that when she returned about an hour later, when checking



on her child she realized she could not wake him up. Wright called 911, and the paramedics who responded found that the child could not be revived and concluded that he had not been breathing and had not had a pulse for twenty to thirty minutes. Plaintiff alleges that the Defendant Wilson, an investigator with the Beaufort County Sheriff's Department, arrived after the child's body had been removed. Plaintiff informed Wilson that her son suffered from eczema and was taking hydroxyzine (the generic name for Atarax) to relieve the itching, and Wilson then sent two persons, Deputy Adam Braisen and Regina Mitchell (Wright's boyfriend's cousin), to Plaintiff's house to retrieve the medication. Plaintiff alleges that, according to Wilson's investigative notes, she informed Wilson that she had given her child three doses of hydroxyzine that day, as prescribed by the physician. Plaintiff alleges that an autopsy was performed on the child the following day by Dr. Michael Caplan with the Medical University of South Carolina, and that according to Caplan's autopsy report, he was informed by Wilson that hydroxyzine was the only medication the child had taken. Plaintiff alleges that Wilson also told Dr. Caplan that the Plaintiff was intoxicated that evening, which was a false statement.

Plaintiff also alleges that on that same date, September 19, 2006, the Defendant Garvin, identified as a "retained forensic expert", told Wilson that, in her experience, this appeared to be a case of "chemical restraint" rather than "intentional poisoning". Nonetheless, Plaintiff alleges that after consulting with Garvin, Dr. Caplan concluded in his autopsy report that the cause of the child's death was acute hydroxyzine intoxication complicating hydroxyzine treatment for eczema, and further determined the manner of death to be a homicide. Plaintiff alleges that Wilson then met with Wright on September 28, 2006, and that Wright told Wilson (according to Wilson's

3



investigative notes) that Plaintiff said that she had given her child the proper amount of medication, and had never admitted to having given her child too much medication. Plaintiff alleges, however, that after conducting an investigation directed by the Defendant McCall-Tanner, an Assistant Solicitor with the Fourteenth Circuit Solicitor's Office, Wilson obtained an arrest warrant for the Plaintiff on the charge of homicide by child abuse. Plaintiff alleges that Wright's statement was never told to the Judge when obtaining the warrant, and that Wilson further informed her that the decision to file charges was "out of [her] hands". Plaintiff alleges that she voluntarily surrendered herself to the police, and remained in pretrial custody from April 30, 2007 until the date of her trial.

Plaintiff alleges that the arrest warrant secured by Wilson on April 24, 2007 charged her with "knowingly" administering to her son an excessive amount of prescribed eczema medication causing the child's death as reported by the pathologist due to acute hydroxyzine intoxication, and that the warrant application stated that the "[a]ffiant [Wilson] and others are witnesses to prove the charge". Plaintiff further alleges that at her trial held on May 19, 2008, the Defendant McCall-Tanner argued to the jury that she may have even intentionally murdered her child. Plaintiff alleges that McCall-Tanner also repeatedly misstated the evidence in the case during her closing argument for the purpose of inflaming the passions of the jury.

With respect to the Defendant Garvin, Plaintiff alleges that Garvin operates a business called Forensic Science Network, LLC, through which she offers consultation services in the analysis and interpretation of toxicology reports. Plaintiff alleges that Garvin, a pharmacist, is also employed as the director of the forensic laboratory for the Richland County Sheriff's Office. Plaintiff alleges that Garvin is not a physician, and that she violated South Carolina law when she opined and then

4



testified as to the cause and manner of death of the child since this conclusion was a medical opinion and beyond her education or expertise. Plaintiff alleges that Garvin also violated established South Carolina law when she communicated to Wilson and McCall-Tanner that the child had died of a drug overdose and that Plaintiff used the medication to chemically restrain the child, since such conclusions are also medical judgments and well beyond the expertise of a pharmacist.

        Plaintiff alleges that the concentration of hydroxyzine in the child's system and the amount of drug that remained in the medicine bottle was consistent with the child taking one-half tablespoon dosages of the prescribed medication, not one half teaspoon dosages, and that Garvin knew that the amount of hydroxyzine in the child's system was consistent with the child having received one half tablespoon dosages of the medication, but nevertheless actively participated with McCall-Tanner and Wilson in Plaintiff's prosecution for homicide by child abuse, which required the state to prove that Plaintiff "recklessly" disregarded the well being of her child. Plaintiff alleges that Garvin offered highly misleading information to the Court during trial in support of her "chemical restraint" theory, including that it was unusual for a child to be prescribed hydroxyzine when it has been approved by the FDA for pediatric use.

        Plaintiff further alleges that at some point prior to her being arrested, either Wilson or McCall-Tanner received a letter from the child's biological father wherein he stated that Plaintiff was at fault for being careless and that for some reason Plaintiff had told him that the child was taking tablespoon dosages instead of teaspoon dosages, as stated in the forensic autopsy final report. Plaintiff alleges that this information was also not communicated to the judge who signed the warrant, nor did Wilson tell the judge that there were at least two witnesses who stated that Plaintiff



believed she was giving the child the proper dosing of medication. Rather, Wilson informed the judge that she had witnesses who said Plaintiff had "knowingly" given her child too much medication, which was a false statement. Plaintiff alleges that all three Defendants had reason to know that the concentration of hydroxyzine in the child's blood was a product of a tragic but simple mistake, but chose instead to pursue a homicide by child abuse case against the Plaintiff. Plaintiff also alleges that on September 27, 2006, Wilson completed two affidavits for emergency protective custody and forwarded them to the Department of Social Services for the purpose of having Plaintiff's other two children removed from her custody.

Plaintiff alleges that McCall-Tanner knew that it was illegal to have her expert testify beyond her range of expertise in violation of the "well established law in this state". Plaintiff further alleges that pursuant to the Fourteenth Circuit Solicitor's Office's "vertical prosecution and [ ] on-call system," that solicitors are available to law enforcement to provide legal assistance at any time, which has the "added benefit of helping the prosecutor prepare their cases from the beginning, in many cases before arrest". Plaintiff alleges that, because of this policy, solicitors are placed in an investigative capacity from the very beginning of the case, and that pursuant to this policy McCall-Tanner directed the investigation against the Plaintiff for homicide by child abuse. Plaintiff alleges that even after the South Carolina Supreme Court reversed Plaintiff's conviction, McCall-Tanner refused to consent to her request for an expungement.

In her First Cause of Action for malicious prosecution, Plaintiff alleges that the Defendants violated her constitutional rights by "lying and omitting material information" to the judge in obtaining a warrant, arresting Plaintiff without probable cause, and prosecuting and convicting her pursuant to the arrest warrant based on the investigation conducted by the Defendants.

6



In her Second Cause of Action, Plaintiff alleges that the Defendants engaged in an unlawful conspiracy in violation of her constitutional rights by acting in agreement to pursue a homicide by child abuse charge against the Plaintiff when it was not supported by the evidence available and for the purposes of having an innocent woman convicted of a horrendous crime, and that in doing so coordinated their activities during the pre-arrest investigation and by agreeing to apply for an arrest warrant and  prosecuting the Plaintiff.  Plaintiff seeks monetary damages against the Defendants. See generally, Amended Complaint, ¶ ¶ 6-10.

### Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face".  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Here, in order to set forth a viable malicious prosecution claim, Plaintiff must have sufficiently alleged that the Defendants caused a seizure of the Plaintiff pursuant to legal process unsupported by probable cause, and that the criminal proceedings were ultimately terminated in the Plaintiff's favor.  Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) [A malicious prosecution claim under § 1983 "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort"], quoting Lambert v. Williams, 223 F.3de 257, 261 (4th Cir. 2000).

For purposes of their motion to dismiss, Defendants have not contested that Plaintiff's criminal case was terminated in her favor, as alleged in the Complaint.  See also Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995)[For claims based on malicious prosecution, the limitations period



starts to run only when the underlying criminal activity is conclusively terminated]. Therefore, at this stage of the proceedings, the only question before the Court is whether Plaintiff has sufficiently alleged that the Defendants caused her to be arrested pursuant to legal process which was unsupported by probable cause.[3] <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; <u>Ashcroft,</u> 129 S.Ct. at 1949 [Plaintiff must set forth sufficient factual matters to state a plausible claim for relief "on its face"]; <u>Brown v. Gilmore</u>, 278 F.3d 362, 368 (4th Cir. 2002)["To prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [she] was violating [the law]"].

   Defendants McCall-Tanner and Wilson argue in their motion that they are entitled to dismissal of Plaintiff's malicious prosecution claim because Plaintiff has failed to assert that any specific lie was told to the Judge in obtaining the warrant by either McCall-Tanner or Wilson, and that she cannot succeed on this claim because she cannot prove that the officer deliberately or with reckless disregard for the truth made materially false statements in an affidavit supporting the request for a warrant, failed to inform the judicial officer of facts the law enforcement officer knew would negate probable cause, or omitted material facts with the intent to make, or with reckless disregard

---

[3]The continuation of the charges is what distinguishes this claim from one for false arrest or imprisonment. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 389 (2007) ["Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a Magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."] (internal citations omitted); <u>see</u> <u>also</u> <u>Panzica v. Corrections Corp. of America</u>, 559 Fed.Appx. 461, 464-465 (6th Cir. Mar. 17, 2014)[Distinguishing between malicious prosecution and false imprisonment].



of whether they thereby made, the affidavit misleading.  Defendants cite <u>Miller v. Prince Georges County, Maryland</u>, 475 F.3d 621 (4th Cir. 2007) as support for their argument that Plaintiff's claim should be dismissed.  However, the undersigned is constrained to note that <u>Miller</u> was decided by the Court on a Rule 56 motion for summary judgment, not on a Rule 12 motion to dismiss.  The standards for evaluating these two motions is substantially different.  In deciding a summary judgment motion, the Court looks at the facts and evidence (usually obtained through discovery) to determine whether the evidence creates a genuine issue of fact with respect to the claim at issue.[4]  Conversely, a "motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses".  <u>Republican Party of N. C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  Rather, in considering a motion to dismiss for failure to state a claim, the Complaint is viewed by the Court in the light most favorable to the Plaintiff, and a Plaintiff's well-pleaded allegations are taken as true.  <u>Mylan v. Labs., Inc., v. Matkai</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

        In this case, Wilson was the investigating officer in the death of Plaintiff's son.  Considering the allegations of the Complaint in the light most favorable to the Plaintiff, after conducting an investigation directed by McCall-Tanner pursuant to the Solicitor's Office's "vertical prosecution and [ ] on-call system", under which the solicitor and investigating officer work in

---

[4]It should be noted that one of the Defendants and the Plaintiff submitted evidentiary exhibits as attachments to their briefs.  However, the undersigned has not considered these exhibits, as to do so converts (except in some limited circumstances) a Rule 12 motion to a Rule 56 motion for summary judgment, requiring notice and opportunity for further briefing.  <u>Bosiger v. U. S. Airways</u>, 510 F.3d 442, 450 (4th Cir. 2007).  The undersigned concludes that before properly considering a Rule 56 motion in this case, additional fact finding would be required given the nature of the claim made, and therefore the undersigned has not considered these exhibits in ruling on Defendants' motion.

9



tandem in the investigation of a potential crime and deciding on whether charges should be filed, Wilson submitted an affidavit to the court requesting an arrest warrant for the Plaintiff in which she stated that the Plaintiff had "knowingly" administered an excessive amount of prescription medication to her son, and that she [Wilson] and others were witnesses to prove the charge, when in fact there were no such witnesses.  Plaintiff further alleges that there were actually at least two witnesses (Angenetta Wright and the child's biological father) who had stated the opposite; that Plaintiff believed she was giving her child the proper dosage of medication, while Plaintiff herself, as is documented in Wilson's investigation notes, also told Wilson that she had given her child three doses of hydroxyzine that day, the dosage amount prescribed by the physician.  However, Plaintiff alleges that none of this information was provided to the judge, with Wilson instead falsely telling the judge that she had evidence that the Plaintiff "knowingly" administered excessive amounts of hydroxyzine to her son, all in concert with and under the direction of McCall-Tanner pursuant to the established policy of the solicitor's office.  Marshall v. Odom, 156 F.Supp. 2d 525, 532 (D. MD. 2001)["To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right."], citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996).  Plaintiff alleges that McCall-Tanner, together with Wilson, thereafter prosecuted her for this charge based on this warrant, and that even after she was ultimately exonerated, McCall-Tanner refused to consent to her request for an expungement.

   Viewed in the light most favorable to the Plaintiff, and taking the factual allegations of the Complaint as true, Plaintiff has sufficiently alleged that her seizure was pursuant to legal process unsupported by probable cause because it followed from a warrant affidavit that was



deficient due to Wilson, acting in concert with and under the direction of McCall-Tanner, making materially false statements in the affidavit, or that at the least her statements had a "reckless disregard for the truth" or omitted material facts with the intent to make the affidavit misleading or with reckless disregard of whether they made the affidavit misleading. Miller, 475 F.3d at 627; see also United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990); Brown, 278 F.3d at 368 ["To prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating [the law]"]. Plaintiff alleges that Wilson told the judge that she had evidence to establish that Plaintiff had committed homicide by child abuse by "knowingly" administering an excessive and lethal amount of a prescription drug to her child, when (as confirmed by the State Supreme Court on appeal) they had no such evidence, and in fact (but which was not told to the judge) two witnesses as well as the Plaintiff in her statement to the investigator had said just the opposite.

These factual allegations are sufficient to withstand the Defendants' motion to dismiss. Miller, 475 F.3d at 627 [Reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts he knew that would negate probable cause]; Vogt v. Greenmarine Holding, LLC, 318 F.Supp.2d 136, 146 (S.D.N.Y. 2004) [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"]; Ashcroft, 129 S.Ct. at 1949 [Rule 12 motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face"]; Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010)[Plaintiff only required to provide adequate notice to the defendant of the basis for

11



the lawsuit and to make a claim plausible];see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level].

    Finally, there is also a question of whether *both* Wilson and McCall-Tanner should be required to defend this claim.  With respect to Wilson, a subsequent act of an independent decision maker, such as a prosecutor, can insulate a police officer from liability.  Cf. Zahrey v. Coffey, 221 F.3d 342, 351 (2nd Cir. 2000).  In Evans, the Fourth Circuit determined that since police officers and prosecutors often work together to establish probable cause and seek indictments, such collaboration could always be characterized as a "conspiracy", and that allowing a § 1983 claim to proceed against police officers on allegations of such a conspiracy would therefore not be proper absent allegations that the officer either mislead or pressured the prosecutor to seek the indictment. Evans, 703 F.3 at 648-649.  However, in this case there is not a mere generalized allegation of a "conspiracy"; rather, Plaintiff has set forth factual allegations that Wilson and McCall-Tanner actively worked and made the decision together to bring charges against the Plaintiff through the submission of an affidavit they knew was false and misleading and that in doing so they together conspired to withhold relevant, probative information from the judge.  At least at this point, these factual allegations are sufficient to allow this claim to proceed.  Marshall, 156 F.Supp. 2d at 532 ["To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right."]; Francis, et al, v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009)[Plausibility standard met where the Plaintiff

12



"articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief].[5]

With respect to McCall-Tanner, while a prosecutor has absolute immunity under § 1983 for actions taken in judicial proceedings, they have only qualified immunity for actions taken outside of judicial proceedings. Buckley v. Fitzsimmons, 113 S.Ct. 2606 (1993); Burns v. Reed, 500 U.S. 478 (1991). As Plaintiff alleges that McCall-Tanner was a party to and engaged in the improper conduct alleged during the investigative process of her case, McCall-Tanner would not be entitled to absolute prosecutional immunity under the facts as alleged. Schrob v. Catterson, 948 F.2d 1402, 1414-1415 (3d Cir. 1991)[making false statements to support a complaint, arrest warrant and a search warrant, participation in an unlawful search, and malicious prosecution - constituted investigative activities not protected by absolute immunity]; see also Smith v. Breen, No. 09-2770, 2010 WL 2557447 at * 11 (W.D.Tenn. June 21, 2000).

## Conclusion

Based on the foregoing, it is **recommended** that the Defendants' motion to dismiss be **denied** at this time. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any

---

[5]In any event, Evans was decided on a motion for summary judgment after the parties had had the opportunity for discovery to establish the facts and was based on the evidence. Here, all that is required is that the Complaint contain sufficient factual allegations to allow the claim to proceed to discovery. For the reasons set forth hereinabove, Plaintiff's Complaint contains sufficient factual allegations to allow her claims to proceed against these Defendants, at least at this point in the proceedings. Wolman v. Tose, 467 F.2d 29, 33, n. 5 (4th Cir. 1972)["Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of action are present."]; Miller, 475 F.3d at 627 [Reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause].



set of facts in support of his claim entitling him to relief'"], citing <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999); <u>cf.</u> <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing <u>Harrison v. United Postal Service</u>, 840 F.2d 1149, 1152 (4th Cir. 1988); <u>see</u> <u>also</u> <u>Austen</u>, 709 F.Supp.2d at 172 [<u>Iqbal's</u> plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; and, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"]; citing <u>Twombly</u>, 550 U.S. at 556 (internal quotation marks and citations omitted).

        The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 30, 2014
Charleston, South Carolina

14



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

15

