IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Paris Avery, | ) | |
| | ) | C/A No. 9:14-037-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Angela McCall-Tanner, in her individual | ) | |
| capacity, Christine Wilson, in her | ) | |
| individual capacity, and Demetra Garvin, | ) | |
| in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

Plaintiff Paris Avery was convicted on May 21, 2008, on a charge of homicide by child abuse after her fifteen month old son died from an overdose of hydroxyzine.  See S.C. Code Ann. § 16-3-85 (2003).  She was sentenced to thirty-five years imprisonment.  By decision issued June 12, 2013, the South Carolina Supreme Court overturned the conviction.  The supreme court determined that the state had failed to prove the necessary mens rea from which a jury could conclude that the child had died under circumstances manifesting an extreme indifference to human life.  See State v. Avery, No. 2013-MO-016, 2013 WL 8596560 (S.C. 2013) (holding that the state must prove a defendant consciously engaged in a life-threatening act with indifference as to whether the victim lives or dies).  Plaintiff was released from prison on July 25, 2013.

On March 17, 2014, Plaintiff filed an amended complaint against Defendants Angela McCall-Tanner, the solicitor who prosecuted the criminal action; Christine Wilson, lead investigator in the case; and Demetra Garvin, the state's forensic toxicologist.  In her amended complaint, Plaintiff alleges that Defendants deprived her of her Fourth Amendment rights such that she spent

2,281 days wrongfully incarcerated and has lost custody of her other children. Plaintiff asserts causes of action for malicious prosecution in violation of her rights under the Fourth Amendment (First Cause of Action) and conspiracy to violate her constitutional rights (Second Cause of Action) pursuant to 42 U.S.C. § 1983. She seeks compensatory and punitive damages as well as reasonable attorneys' fees and costs under 42 U.S.C. § 1988. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling.

This matter came before the court on motion for summary judgment filed by Plaintiff on May 13, 2015. Defendants McCall-Tanner and Wilson filed a response in opposition to Plaintiff's motion on June 12, 2015. Also on June 12, 2015, Defendants McCall-Tanner and Wilson filed a motion for summary judgment. On June 16, 2015, Defendant Garvin filed a motion for summary judgment, as well as a response in opposition to Plaintiff's motion for summary judgment. Plaintiff filed a response in opposition to Defendants' motions on June 26, 2015.

On October 22, 2015, the Magistrate Judge issued a Report and Recommendation. The Magistrate Judge determined that Defendant McCall-Tanner, as prosecutor in Plaintiff's criminal case, enjoys absolute immunity from suit. The Magistrate Judge further determined that Plaintiff could not make out a malicious prosecution claim because the evidence supported probable cause to arrest her. Finally, the Magistrate Judge found that Plaintiff's conspiracy claim failed because Plaintiff failed to establish a violation of her constitutional rights. Accordingly, the Magistrate Judge recommended that Plaintiff's motion for summary judgment be denied and Defendants' motions for summary judgment be granted. Plaintiff filed objections to the Report and Recommendation on

November 9, 2015. Defendants McCall-Tanner and Wilson filed a reply on November 30, 2015. Defendant Garvin also filed a reply to Plaintiff's objections on November 30, 2015.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. <u>Id.</u> In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).

DISCUSSION

Plaintiff does not object to the Magistrate Judge's determination that Defendant McCall-Tanner is entitled to absolute immunity in her role as the solicitor who prosecuted the case. The court, finding no clear error on the face of the record, accepts the recommendation of the Magistrate Judge as to this Defendant. Accordingly, the court turns to Plaintiff's objections regarding the remaining Defendants.

A.    <u>Malicious Prosecution</u>

The Court of Appeals for the Fourth Circuit has held that "there is no such thing as a '§ 1983 malicious prosecution' claim." <u>Lambert v. Williams</u>, 223 F.3d 257, 262 (4th Cir. 2000). Rather, a "§ 1983 malicious prosecution claim" is founded on a Fourth Amendment seizure that incorporates

3

elements of the analogous common law tort of malicious prosecution.  Id.

To maintain an action for malicious prosecution, a plaintiff must establish:  (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage.  Pallares v. Seinar, 756 S.E.2d 128, 131 (S.C. 2014) (quoting  Law v. S.C. Dep't of Corr., 629 S.E.2d 642, 648 (S.C. 2006)).  The dispositive issue in this case is whether Defendant Wilson had probable cause to seek an arrest warrant.

Probable cause in this context does not turn upon Plaintiff's guilt or innocence, but rather upon whether the facts within Defendant Wilson's knowledge would lead a reasonable person to believe Plaintiff was guilty of the crimes charged.  See id.  The issue is not what the actual facts were, but what the prosecuting party–in this case, Defendant Wilson–honestly believed them to be. See id.  (citing Eaves v. Broad River Elec. Coop., 289 S.E.2d 414, 416 (S.C. 1982)).  When no reasonable officer could believe, in light of the circumstances of the offense, that probable cause exists, there is a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause.  Horton v. Vinson, No. 1:14CV192, 2015 WL 4774276, at *14 (N.D.W. Va. Aug. 12, 2015) (quoting George v. Kanawha Cty. Sheriff's Dept., No. 2:080141, 2011 WL 108930, at *2 (S.D.W.Va. Jan. 11, 2011)).

Defendant Wilson's investigation leading up to her request for an arrest warrant provided her with the following information:

- Forensic Autopsy Final Report prepared at Department of Pathology and Lab Medicine at the Medical University of South Carolina.  The cause of death was listed

4

as acute hydroxyzine intoxication complicating hydroxyzine treatment for eczema. The postmortem level of hydroxyzine was 300 ng/ml. ECF No. 57-11.

- Toxicology Report prepared by National Medical Services Inc. The toxicology report noted that the peak level following a single 100 mg oral dose of hydroxyzine is up to 80 ng/ml. The report noted that postmortem hydroxyzine concentration was markedly elevated; "toxic concentrations of the drug are associated with profound sedation, tremor, and central nervous system depression." ECF No. 57-9.

- A neighbor who had been babysitting the child the night of the incident recited that the child appeared to be in a "deeper sleep than usual" when he was dropped off at her house. The babysitter gave the child no medication and was the only adult present during the time the child was in her care. ECF No. 75-11, 2.

- Other persons (specifically the child's foster parents) stated they had seen Plaintiff use Dimetapp, NyQuil, Benadryl, and other substances to "calm the kids down so that she wouldn't have to deal with them." ECF No. 55-1, 6; 57-4, 5.

- When the medicine was retrieved from Plaintiff's residence, it was noted that, although the prescription had been filled two days prior to the death, it appeared that an excessive amount of medication was missing from the bottle. ECF No. 55-1, 13.

- Plaintiff stated she had followed the dosage instructions printed on the label of the medication and used a dosing spoon to administer the proper doses. Plaintiff told Defendant Wilson she had given the child the proper doses at 9:00 am, 3:00 pm, and 8:00 pm. However, Plaintiff had been at work from 11:00 am until 5:42 pm so could not have given the child his medicine at 3:00 pm.

- The owner of the child's day care facility reported that she had the child in her care from about 8:30 am or 9:00 am until about 5:30 pm or 6:30 pm the day of the incident. The owner stated she had never been provided with any medication for the child. ECF No. 75-11, 7.

- Defendant Garvin informed her that the hydroxyzine was to be administered one-half teaspoon (2.5 ml) every six hours as needed. Twelve doses over three days would total 30 mls; however, based on the amount of medicine remaining in the bottle, 26 doses, or 66 mls, had been administered. Defendant Garvin observed that a 100 mg dose of hydroxyzine would produce a blood level of about 75 ng/m; the child, who was supposed to receive a dosage of 2.5 mls (5 mg) had a postmortem blood level of 300 ng/ml. ECF No. 56-5.

See generally Supplementary Report, 75-11.

5

Plaintiff points to a number of inconsistencies or omissions with respect to information provided to Defendant Garvin by Defendant Wilson, apparently in an effort to call Defendant Wilson's credibility into account. For example, Plaintiff states Defendant Wilson told Defendant Garvin there had not been any spillage. Plaintiff asserts that she should have been asked if any of the of the hydroxyzine had spilled, which could have explained why so much medicine was missing from the bottle. Plaintiff's objection does not raise a genuine issue of material fact. Regardless of whether Plaintiff spilled a portion of the hydroxyzine, the child's postmortem blood level constituted acute hydroxyzine intoxication.

Similarly, Plaintiff contends Defendant Wilson lied to Defendant Garvin by stating Plaintiff understood the dosing directions. However, Plaintiff herself maintained throughout the investigation that she understood the directions and provided the child with the correct dosages. Again, Plaintiff points to no genuine issue of material fact. Plaintiff's objections are without merit.

As the Magistrate Judge correctly concluded, Defendant Wilson possessed probable cause to seek a warrant for Plaintiff's arrest. Therefore, Plaintiff's Fourth Amendment claim fails.

B.    Conspiracy

To establish a civil conspiracy under § 1983, Plaintiff must present evidence that Defendants acted in concert and that some overt act was done in furtherance of the conspiracy that resulted in Plaintiff's deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996 (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). As the Magistrate Judge properly found, Plaintiff's cause of action fails because she has established no deprivation of a constitutional right.

6

CONCLUSION

The court adopts and incorporates by reference the Report and Recommendation of the Magistrate Judge. For the reasons stated herein and in the Report and Recommendation, Plaintiff's motion for summary judgment (ECF No. 47) is **denied**. Defendants' motions for summary judgment (ECF Nos. 56, 57) are **granted**, and the case dismissed, with prejudice.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 30, 2016

7